KNOCKLONG CORP., Appellant, v. LONG ISLAND STATE PARK COMMISSION et al., Respondents.— In an action pursuant to article 15 of the Real Property Law, to determine claims to a parcel of real property, these are consolidated appeals by the plaintiff from (1) a judgment which dismissed the complaint on the merits and granted judgment to the defendants on their counterclaim by adjudging that the defendants have title to the parcel in question and that plaintiff has no interest therein (1st appeal, No. 86 E); and (2) an order denying motion of plaintiff to set aside the judgment and for a new trial on the ground of newly discovered evidence (2d appeal, No. 87 E). Judgment affirmed, with costs. Order affirmed, with $10 costs and disbursements. On the death of Thomas Baldwin in 1922 title to the parcel escheated to the State. The respondents sustained the burden of rebutting the presumption of the existence of heirs both as to Thomas and his alleged uncle Frederick Baldwin, who had died in 1892. The great lapse of time between their respective deaths and determination of this action in 1956 without the slightest proof of existence of heirs; the census records; the efforts of the witnesses Steinert and Stoll to find heirs; and the statements of Thomas Baldwin to his friends, together with other proof in the record, were sufficient to create a prima facie case of escheat (*Jackson* v. *Etz*, 5 Cow. 314, 320; *People* v. *Fulton Fire Ins. Co.*, 25 Wend. 205, 216; *Matter of Clarke*, 131 App. Div. 688, 690; *Matter of Clark*, 271 App. Div. 691, 696). There was no proof of the existence of a son of Frederick Baldwin. The notation in the 1855 Brooklyn census record has no probative value in the light of the absence of any designation of the status of "Thomas" in other census records prior and subsequent thereto, save the one in which "Thomas" is described as "nephew". The discrepancies in these records as to the age of "Thomas" and the lack of proof of existence of any person named Thomas Baldwin who lived with Frederick, save the one who died in 1922, further disprove said notation. Upon the motion to act aside the judgment, the proof relied upon shows no more than that the wife, Mary Ann, in 1859 predeceased Frederick, leaving blood relatives whose descendants are in existence. This does not indicate probability of success because there is still no showing (1) of the existence of a son of Mary Ann and Frederick, and (2) of the son's survivorship of Frederick, an essential to constitute the existence of heirs of Mary Ann and a factor which would serve to defeat escheat. Although the showing as to births and deaths and as to residences of the members of the Bennett family and even their dates of sailing to the United States, is prolific and detailed, there is nothing with respect to the principals, Mary Ann, Frederick and the alleged son, other than a marriage certificate and a reference to an 1841 census. There is no mention of a son in the census reference although the 1855 Brooklyn census record, so heavily relied on by appellant, indicates that the "son" was born in England in 1839. Nor is there any showing of a death certificate for a son, although the death certificate of Mary Ann is presented. Furthermore, Steinert had sought heirs from 1922 to 1945. He knew in 1928 of the adverse claim of title. The action was not commenced until 1953, and after plaintiff had proceeded lethargically, the action was tried in May, 1955. The trial was reopened late in 1955 to permit plaintiff to offer additional proof of heirs after its pedigree claim had proved to be a fiasco. As early as 1952, the attorney for Steinert and plaintiff was advised of the existence of a letter from Mary Ann's sister at the Bennett residence in London; such letter being among the personal effects of Thomas, who died in 1922. The litigation must end. Nolan, P. J., Beldock, Ughetta, Christ and Pette, JJ., concur.